**GOVERNMENT OF the CANAL ZONE,**
**Plaintiff-Appellee,**

v.

**Stacy Wayne BENDER,**
**Defendant-Appellant.**

**GOVERNMENT OF the CANAL ZONE,**
**Plaintiff-Appellee,**

v.

**Harry Robert CARHART, II,**
**Defendant-Appellant.**

Nos. 77–5431, 77–5432.

United States Court of Appeals,
Fifth Circuit.

June 2, 1978.

Daniel D. Douglass (Court-appointed), Balboa, Canal Zone, for defendants appellants.

Frank J. Violanti, U. S. Atty., Wallace D. Baldwin, Asst. U. S. Atty., Balboa, Canal Zone, for plaintiff appellee.

Before COWEN [*], Senior Judge, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

Defendants Stacy Wayne Bender and Harry Robert Carhart, II were charged with possession of marijuana in violation of 6 Canal Zone Code (C.Z.C.) § 1152(1). After the district court denied defendants' motion to suppress the incriminating evidence, the parties stipulated that the evidence heard on the motion to suppress was the same evidence that would be produced at trial. The district court then found both defendants guilty and fined each $100. Defendants now appeal.

The only question for decision on this appeal is whether the search which uncovered the marijuana evidence was conducted in violation of appellants' rights to be free from unreasonable searches and seizures. 1 C.Z.C. § 31(4).[1] We conclude that appellants' rights were violated by the search in question and therefore reverse the convictions of both Bender and Carhart.

---

[*] Senior Judge of the United States Court of Claims, sitting by designation.

[1] Appellants originally argued in their brief that the evidence upon which the stipulation

## I. FACTS

The circumstances leading to appellants' arrest are not in dispute. In the early evening of May 3, 1977, Officers Jimmy R. Ransom and Greg Gladden, detectives of the Narcotics Unit, Canal Zone Police, were on patrol in the Paraiso area of the Canal Zone. The officers observed a 1965 Plymouth parked on a hill with the dome light turned on and the two male occupants sitting in the front seat. Officer Ransom testified that based on the remoteness of the area and past experiences, the detectives suspected that the occupants were either engaging in homosexual activity or using drugs.

The officers approached the vehicle, and Detective Ransom requested identification from the driver, defendant Bender. After Bender provided the necessary identification, the officers asked the suspects what they were doing on the hill, and Bender responded that they "came up to enjoy the view." This reply increased the officers' suspicion because there was no view of the Canal from the spot at which the defendants had parked the car. The defendants were then ordered to exit the vehicle. Officer Gladden positioned himself between the car door on the passenger side and defendant Carhart. Likewise, defendant Bender walked two feet past the end of the driver's door, and Officer Ransom stepped between the door and the vehicle. Ransom testified that he then turned and leaned into the vehicle to look for weapons. When "a third" of his head was into the car, he smelled "a very faint odor of marijuana," reached under the front seat, and pulled out a frisbee containing marijuana. Appellants were then arrested.

## II. *Application of the Canal Zone "Bill of Rights"*

■ The initial question for review is the applicable standard governing searches in

---

was based was insufficient to make out all elements of the crime. This point of error was withdrawn at oral argument.

the Canal Zone. The provisions of 1 C.Z.C. § 31, setting forth rights and guarantees applicable in the Canal Zone, are patterned upon the Bill of Rights of the United States Constitution. The fourth amendment to the Constitution is incorporated almost verbatim into the Code:

The right of the people to be secure against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

1 C.Z.C. § 31(4). In discussing the applicability of fifth amendment precedents to the corresponding section of the Code, this Court has stated that "[a] statutory 'bill of rights' enacted by Congress for an unincorporated territory such as the Canal Zone is to be given the same construction as that accorded the equivalent provisions of the Constitution." *United States v. Husband R. (Roach)*, 453 F.2d 1054 (5th Cir. 1971), *cert. denied*, 406 U.S. 935, 92 S.Ct. 1785, 32 L.Ed.2d 136 (1972). We therefore conclude that the fourth amendment, as interpreted by the federal courts, governs the actions of the Canal Zone police through the application of the Canal Zone Code.

### III. *Constitutionality of the Search*

■ Appellants concede that the officers had reasonable suspicion to approach the vehicle for investigatory purposes and briefly question the suspects about possible criminal activity. It follows, therefore, that the intrusion on appellants' liberties resulting from the officers' order to step out of the car does not violate the fourth amendment's proscription of unreasonable searches and seizures under the circumstances of this case. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977). The likelihood that the suspects represented a physical danger to the officers was at least as great here as in the routine traffic violation stop at issue in *Mimms*.

■ Our inquiry is thus narrowed to the question of whether Officer Ransom's limited search of the vehicle, while the defendants were standing outside the car, violated the fourth amendment. The government recognizes that the officers lacked probable cause to look for narcotics or weapons *before* the search began, and argues instead that a limited search of the vehicle for weapons which might be used against the officers was authorized by the Supreme Court's opinion in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court in *Terry* reasoned that a policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a potentially hostile suspect. The Court therefore permitted "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." 88 S.Ct. at 1883. "[T]he issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

The Supreme Court has carefully stressed, however, that the scope of such searches must be limited to this protective purpose. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). *Terry* can be summoned when a policeman's lot is truly fraught with danger, but *Terry* is not engraved on every policeman's badge. As the *Terry* Court explained, "A search for weapons in the absence of probable cause . . . must . . . be strictly circumscribed by the exigencies which justify its initiation." *Terry v. Ohio, supra,* 88 S.Ct. at 1882. Where the search is "not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man"—[s]uch a search violates the guarantee of the Fourth Amendment." *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). *See also United States v. Brignoni-*

*Ponce,* 422 U.S. 694, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

Applying these principles to the facts in the case at bar, we conclude that Officer Ransom's actions cannot be justified by the *Terry* rationale. Neither Officer Ransom nor Officer Gladden attempted to "pat down" the suspects for weapons within their immediate control. Rather, after the defendants got out of the car, Officer Ransom immediately placed his head into the vehicle. At the time, the officers had positioned themselves between the vehicle and the suspects. Bender was two feet away from the opened door on the driver's side, and Officer Ransom was standing between the door and the vehicle. Any weapon which might have been hidden in the car would have been outside the reach of either suspect and could not have presented a danger to the officers while they were conducting their investigation. To allow the scope of a *Terry* search to extend outside the area of the suspects' immediate control would be to sever the *Terry* exception from its rationale. A *Terry* search can be justified only by the need to protect investigating officers from attack by hostile suspects. Here, the atmosphere was placid not terrorful. Under the circumstances of this case, searching the vehicle was not reasonably necessary to the accomplishment of this goal.

In conclusion, the search at issue was not reasonably limited by the need to protect the officers from physical danger as required by *Tery v. Ohio.* Furthermore, the officers did not have probable cause to conduct the search. The concept of probable cause has lost some of its puissance, but it is not moribund, and its eulogy has not been delivered. It may be on the terminal route, but the terminus has not been reached. We therefore hold that the officer's conduct was proscribed by the fourth amendment and, consequently, by the Canal Zone Code. The district court erred in denying defendants' motion to suppress, and appellants' convictions must be REVERSED.