Richard Allen JOHNSON and Jamie E. (Joan) Davis, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 31, 1980.

Permission to Appeal Denied by Supreme Court June 30, 1980.

Harold E. Brown, Brown, Brown & Griffin, Chattanooga, for appellants.

William M. Leech, Jr., Atty. Gen., John C. Zimmerman, Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Kenneth L. Miller, Asst. Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

SCOTT, Judge.

The appellants were charged with possession of marijuana. The appellant, Davis, was charged with simple possession and the appellant, Johnson, was charged with possession with the intent to sell. Both were found guilty at a bench trial. Johnson was sentenced to not less than one nor more than five years in the state penitentiary and was fined $500.00. Davis was sentenced to six months in the county jail and fined $100.00. A timely motion for a new trial was made and overruled. The appellants have presented five issues for review.

The first issue concerns whether the trial court erred in failing to sustain their motion to suppress. Finding, as we do, that this was error, the judgment must be reversed and the cause dismissed. It is, therefore, not necessary for us to address the other issues the appellants have presented.

At 3:45 A.M. on September 6, 1978, a patrolman for the Cleveland Police Department was on routine patrol on Keith Street, a four lane thoroughfare. He noticed an automobile in front of him taking up both southbound lanes with the tires on the driver's side across the center line which divides the lanes. When the vehicle failed to get entirely into one lane or the other, the officer turned on the blue lights on his patrol car. The vehicle stopped at the Holiday Inn parking lot and the driver, Johnson, got out and walked back to the patrol car. The officer asked for his identification and his driver's license. The appellant complied and they conversed. He was not arrested for a traffic violation and the officer noticed no signs of intoxication.

The officer then walked to the automobile to "check the passenger". He approached the car from the driver's side and opened the door to talk to the passenger, Davis. The officer then noticed what he thought to be marijuana odor coming from the vehicle and observed what he believed to be marijuana seeds on the seat. The automobile was then searched. When Davis alighted from the car pursuant to his order to do so, she took her umbrella. Since it wasn't raining, the officer searched the umbrella. Marijuana weighing 39.3 grams was taken from the umbrella and the car.

The state contends that the search of the automobile and the umbrella was proper, relying erroneously on *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In that case, the U.S. Supreme Court held that when an automobile is lawfully stopped for a traffic violation, the motorist may be required to alight from the car even though the officer had no reason to suspect any other violation of the law at the time of the stop. Mimms was stopped when police officers observed that his license plate had expired. After stopping him for the purpose of issuing a traffic citation, Mimms was ordered to get out and produce his automobile registration and driver's license. After he did so, the officers noticed a large bulge under his jacket. He was frisked and a .38 caliber pistol was discovered.

■ The narrow question in *Mimms* was whether the order to get out of the car, issued after the driver was lawfully detained was reasonable. 434 U.S. at 109, 98 S.Ct. at 333–334, fn. 6. The Court held that the pat-down was justified based upon the legitimate and weighty need to insure the safety of the officer. The Supreme Court specifically stated that, "we do not hold today that 'whenever an officer has occasion to speak with the driver of a vehicle, he may also order the driver out of the car'", *Id.*

As in *Mimms*, there is no question that the officer was justified in stopping the vehicle. TCA, § 59–823(a) requires that a vehicle shall be driven as nearly as practicable entirely within a single lane. The officer observed a violation of this rule of the road.

■ Following the stopping of the vehicle, the driver got out voluntarily and spoke with the policeman near the patrol car. There is no proof in the record that the driver was patted down for weapons, nor

that the officer had any fear of the driver or passenger. His only purpose in approaching the vehicle was to "check the passengers" (sic). He stated that he did this any time that there is more than one occupant, however, it was unclear as to why this was done.

The narrow question we face is whether a police officer, after having stopped a motor vehicle for a traffic violation, has the right to "check the passengers" who happen to be in the vehicle, nothing else appearing amiss. We hold that officers have no such right. In *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968), the U.S. Supreme Court stated:

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so.

And in *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), the Supreme Court held that:

> (I)n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion . . . and in making that assessment it is imperative that the facts be judged against an objective standard: Would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

Although *Pennsylvania v. Mimms*, supra, applied to the driver, Mr. Justice Stevens in his stinging dissent believed that the holding could include a passenger. He stated:

> Because the balance of convenience and danger is no different for passengers in stopped cars, the Court's logic necessarily encompasses the passenger. This is true even though the passenger has committed no traffic offense . . . (W)hen the justification rests on nothing more than an assumption about the danger associat-

ed with every stop—no matter how trivial the offense—the new rule must apply to the passenger as well as the driver. 98 S.Ct. at 339.

In *Government of Canal Zone v. Bender*, 573 F.2d 1329 (5th Cir. 1978), officers observed an automobile parked on a hill with the dome light on and two male occupants sitting in the front seat. Based on the remoteness of the area and past experiences, the officers suspected that the occupants were either engaged in homosexual activity or using drugs. They approached the vehicle and requested identification from the driver. After he provided his identification, the officers asked the men what they were doing on the hill and the driver responded that they "came up to enjoy the view". Since the Panama Canal was not visible from where the car was parked, this reply increased the officers' suspicion. The men were then ordered to exit the vehicle. One of the officers turned and leaned into the vehicle to look for weapons. When "a third" of his head was into the car, the officer smelled "a very faint odor of marijuana". He reached under the front seat and pulled out a frisbee containing marijuana. The men were then arrested.

The Fifth Circuit, citing *Pennsylvania v. Mimms*, supra, and *Terry v. Ohio*, supra, held that this search could not be justified under the *Terry* rationale. The Court stated:

> A *Terry* search can be justified only by the need to protect investigating officers from attack by hostile suspects. Here, the atmosphere was placid not terrorful. Under the circumstances of this case, searching the vehicle was not reasonably necessary to the accomplishment of this goal.
>
> . . . Furthermore, the officers did not have probable cause to conduct the search. The concept of probable cause has lost some of its puissance but it is not moribund, and its eulogy has not been delivered. It may be on the terminal route, but the terminus has not been reached. 573 F.2d 1329 at 1332.

We adopt the reasoning of the Fifth Circuit and Mr. Justice Stevens who stated:

> (T)o eliminate any requirement that an officer be able to explain the reasons for his actions signals an abandonment of effective judicial supervision of this kind of seizure and leaves police discretion utterly without limits. Some citizens will be subjected to this minor indignity while others—perhaps those with more expensive cars, or different bumper stickers, or different-colored skin—may escape it entirely. 98 S.Ct. 330 at 339.

In this case the officer's suspicion did not rise to the level of the officers' suspicion in *Government of Canal Zone v. Bender*, supra. In that case, because of the remote location and suspicious circumstances one might surmise that some criminal activity was afoot. In this case the presence of a passenger in an automobile with its wheels over the dividing line between lanes on a four lane thoroughfare near the Holiday Inn would give rise to no suspicion. There is no proof in the record that this is a remote or high crime area. The officer enunciated no fear for his safety. He did not pat-down the driver, nor arrest him for a traffic violation. There simply is no explanation for the officer's conduct in opening the car door to "check the passenger" except curiosity, which has never allowed an officer to disregard the Fourth Amendment of the United States Constitution.

Since there is no other evidence of the guilt of the appellants except the fruits of this illegal search, the judgments of conviction are reversed and the cause is dismissed.

O'BRIEN and CORNELIUS, JJ., concur.