[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 07-14111
Non-Argument Calendar

————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 13, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00339-CR-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN BUNKLEY, III,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

**(June 13, 2008)**

Before ANDERSON, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

John Bunkley, III, was convicted of illegal possession of a firearm by a

convicted felon in violation of 18 U.S.C. § 922(g). Bunkley appeals the district

court's denial of his motion to suppress the firearm seized after a pat-down search of his person in front of his home.  On appeal, Bunkley argues that because the officers did not have the reasonable suspicion required to stop him under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), the stop and resulting pat-down search violated his Fourth Amendment right to be free from unreasonable searches and seizures.  For the foregoing reasons, we affirm the ruling of the district court.

## I. FACTS

In May of 2005, an unknown assailant fired shots at U.S. Marshals while the Marshals were arresting a fugitive in the Chamblee section of Atlanta.  Subsequent investigation of the shooting indicated that the Black Mafia Family gang, known for cocaine trafficking and extreme violence, might have been involved.  The investigating officers executed a search warrant at a residence on Spalding Drive in the Dunwoody section of Atlanta, where they found the firearm used against the Marshals.  The officers learned that this house had been rented in a "cash-for-keys" transaction, in which the renter provides a large sum of cash in order to avoid a credit check or having to produce identification.  The realtors who rented the Spalding Drive house informed the officers that they had rented a nearby house, on Jett Ferry Road, in similar fashion but to different renters.

The similarity in rental arrangements led the investigating officers,

including Special Agent John Harvey of the Drug Enforcement Administration, to investigate the Jett Ferry Road house. When the officers arrived at the house, there were moving vans in the driveways. Concerned that the occupants were moving out and the officers might lose the chance to learn their identities, the officers approached the house in order to speak with the occupants. Bunkley met the officers, who were wearing jackets identifying them as law enforcement. Bunkley was wearing shorts and a long, loose t-shirt that covered his waistband. Harvey asked Bunkley if he had a weapon on him and Bunkley said that he did not. Harvey then asked Bunkley some questions about the house and who owned it. Bunkley answered that he did not know who owned the house, although he said he had lived there for four months. Harvey described Bunkley's demeanor as nervous and defensive, but more upset that he had to answer questions than nervous. Harvey again asked Bunkley if he had a weapon, reaching out to pat down Bunkley's left side as he did so. Bunkley then stated that he did have a gun on him, which the officers retrieved from the waistband on Bunkley's right side. The gun's serial number was obliterated. A records check revealed that Bunkley was a convicted felon.

Bunkley was subsequently indicted for possessing a firearm as a convicted felon. He pled guilty to the offense, reserving the right to appeal the district

3

court's denial of his motion to suppress the seized firearm.

## II. DISCUSSION

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's factual findings as true unless the findings are shown to be clearly erroneous. Id. All facts are construed in the light most favorable to the prevailing party below. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). The district court's application of the law to the facts is reviewed de novo. Id. We have made clear that "[t]he individual challenging the search has the burdens of proof and persuasion." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998).

In general, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005). Warrantless searches are presumptively unreasonable. United States v. Gordon, 231 F.3d 750, 754 (11th Cir. 2000). However, an officer may frisk or pat-down an individual in order to conduct a limited search for weapons when the officer has reason to believe that the individual is armed and dangerous. Terry, 392 U.S. at 27, 88 S Ct. at 1883. "Once an officer has legitimately stopped an individual, the officer can

frisk the individual so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety of that of others was in danger." United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (internal quotations omitted). The search must be reasonably limited in scope to protecting the officer by disarming a potentially dangerous individual. Govt' of Canal Zone v. Bender, 573 F.2d 1329, 1331 (5th Cir. 1978).[1] In determining whether reasonable suspicion exists, the courts must review the "totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002). As the Supreme Court made clear in Arvizu, reviewing courts may not consider the facts supporting a conclusion of reasonable suspicion in isolation. Id. at 274, 122 S. Ct. at 751. Even if each individual act is innocent by itself, the facts taken together may provide an officer with reasonable suspicion. Id. The totality of the circumstances inquiry is concerned not with "hard certainties, but with probabilities," and law enforcement officials may therefore rely on "common sense conclusions." United States v. Cortez, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). However, "the Fourth Amendment requires

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

5

at least a minimal level of objective justification for making the stop." <u>Gordon</u>, 231 F.3d at 754 (internal quotations omitted).

In this case, the totality of the circumstances indicates that Harvey had reasonable suspicion to believe that Bunkley was armed and dangerous. The Jett Ferry Road property was located around the corner from the house in which the gun fired at the Marshals was found. Both houses were rented under a "cash-for-keys" arrangement that allowed the renters to avoid producing identification or submitting to a credit check. The investigating officers believed that the Black Mafia Family, a gang known for its extreme violence, was involved in the shooting. Bunkley was wearing a shirt that could conceal a weapon and was behaving in a nervous and upset manner. He did not know whose house it was despite having lived there for four months. Each of these facts may be innocent when viewed individually, but taken together, they create an objective justification for Harvey's reasonable suspicion that Bunkley was armed and dangerous. As a result, Harvey was authorized to perform a minimally intrusive pat-down search of Bunkley. Accordingly, the district court's denial of Bunkley's motion to suppress is

AFFIRMED.[2]

---

[2]Appellant's request for oral argument is DENIED.