IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE v. THOMAS DEWAYNE MOFFATT

**Direct Appeal from the Circuit Court for Obion County**
**No. CC-08-CR-36    William B. Acree, Jr., Judge**

---

**No. W2008-01048-CCA-R3-CD  - Filed June 12, 2009**

---

This appeal involves the question of whether a passenger in a car may be subjected to a pat-down search following a traffic stop if officers suspect the presence of a weapon. The appellee, Thomas Dewayne Moffatt, was indicted by an Obion County grand jury for possession of more than .5 grams of Schedule II cocaine with intent to sell or deliver within 1000 feet of a park (a Class B felony) and tampering with evidence (a Class C felony). He was the passenger in a car which was stopped for a traffic violation, and officers testified that, based upon their belief that a weapon was present, both the driver and the passenger were asked to exit the vehicle with the intent to conduct a pat-down search for weapons. The appellee filed a motion to suppress the evidence seized, the drugs, asserting that the officers did not have reasonable suspicion or probable cause to search him. After hearing testimony at the motion to suppress hearing, the Obion County Circuit Court, relying upon *Johnson v. State*, 601 S.W.2d 326 (Tenn. Crim. App. 1980), concluded that "there was nothing amiss" and that the officers were not entitled to conduct the pat-down search. Because the State was unable to prosecute the case without the suppressed evidence, the charges against the appellee were dismissed. The State now appeals the denial of the motion to suppress. Following review of the record, we conclude that the trial court erred in granting the motion as the evidence presented preponderates against the court's findings. As such, we reverse the court's decision granting the motion, and the case is remanded to the trial court for further action consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James Cannon, Assistant District Attorney General, for the appellant, State of Tennessee.

Charles S. Kelly, Sr., Dyersburg, Tennessee (at hearing), for the appellee, Thomas Dewayne Moffatt.

**OPINION**

## Factual Background

Two members of the Drug Task Force, Officer Shawn Palmer and Deputy David Crocker, were on patrol in Union City on November 2, 2007, as part of their regular duties. While stopped at a stop sign, they observed a blue Crown Victoria pass in front of them. Through the front windshield of the Crown Victoria, Officer Palmer observed that the driver was not wearing a seatbelt, and Deputy Crocker observed that neither the driver nor the passenger was wearing seatbelts. A traffic stop was initiated.

Once the car had stopped, Officer Palmer approached the driver's side of the vehicle while Deputy Crocker approached the passenger side, where the appellee was seated. Officer Palmer explained to the driver why he had initiated the stop and asked for his driver's license. He noticed that the driver began acting "very strange" and "kept looking left and right." He then observed the driver lean over and pull his shirt down, as if he was concealing something. Officer Palmer asked the driver if he had any weapons in the car, and the driver "did a dead stare for about ten seconds" and failed to answer. At this point, believing that the driver could be in possession of a weapon, he informed Deputy Crocker of his concerns by hand signals and mouthing the word "gun." Officer Palmer then got the driver out of the car and performed a pat-down search.

When Officer Palmer signaled him, Deputy Crocker was not aware if Officer Palmer "had actually seen a gun on the driver [or] if he [had] seen a gun in the seat beside him." At that point, he asked the appellee, who had been sitting "like a statute" staring straight ahead, to step outside the vehicle with the intent to conduct a pat-down search of him for weapons. As he emerged from the car, the appellee immediately stuck his hand in the pocket of his sweatshirt and refused Deputy Crocker's request to remove it. The appellee began shouting, "You can't search me." Still concerned about the possibility of a weapon, Deputy Crocker pushed the appellee against the car and again ordered him to remove his hand from his pocket. When the appellee finally complied, he was holding a plastic bag containing a white substance. The appellee proceeded to stuff the bag in his mouth. Deputy Crocker then threatened to "tase" the appellee if he did not spit out the bag, which the appellee did. The substance in the plastic bag was analyzed and determined to be 6.8 grams of cocaine base.

The appellee was indicted for possession of more than .5 grams of cocaine and tampering with evidence. He filed a motion to suppress, asserting initially that the entire stop was a pretext and that there was "no probable cause or right to search the [appellee's] person or the vehicle in which he was a passenger." At the subsequent motion to suppress hearing, Officer Palmer and Deputy Crocker testified to the facts of the stop and search as stated above. No other evidence was introduced. After hearing the testimony, the trial court granted the motion. Without the suppressed evidence, the State was unable to prosecute the case, and the trial court entered judgments dismissing the charges. The State now timely appeals the trial court's decision to grant the motion to suppress. We note that the appellee has failed to file any responsive brief in the case, and, as such, the case is being reviewed solely upon the record and the State's brief.

**Analysis**

On appeal, the State argues that the evidence preponderates against the trial court's findings that the officers did not have the right to search the appellee after stopping the driver for a seat belt violation. The State further argues that the trial court reached an erroneous conclusion of law applicable to the issue and that the ruling must be reversed. We agree.

When a ruling on a motion to suppress is challenged, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of facts." *State v. Lawrence*, 154 S.W.3d 71, 75 (Tenn. 2005) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). However, appellate review of a trial court's conclusions of law and application of law to facts on a motion to suppress evidence is *de novo*. *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006).

Both the state and federal constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. Art. I, § 7. Therefore, a search or seizure conducted without a warrant is presumed unreasonable, and any evidence discovered as a result of such a search is subject to suppression. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022 (1971); *State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997). However, the evidence will not be suppressed if the State proved that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

One such exception is a brief investigatory stop by a law enforcement officer if the officer has a reasonable suspicion, based upon specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968); *Binette*, 33 S.W.3d at 218. In evaluating whether a police officer has a reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. *Binette*, 33 S.W.3d at 218.

At this initial juncture, we note that there does not appear to be a dispute as to whether the initial stop of the vehicle for the seatbelt violation was supported by reasonable suspicion. Although there was some questioning at the hearing with regard to whether the officers were able to observe that the occupants of the vehicle were not wearing seatbelts, the trial court did not address this issue and appears to have concluded it was a valid traffic stop. Indeed, based upon both officers' testimony, we must also conclude that they were justified in initiating the traffic stop because they observed that the occupants of the vehicle not wearing seatbelts, a violation of Tennessee law. *See State v. Berrios*, 235 S.W.3d 99, 105 (Tenn. 2007) ("As a general rule, if the police have probable cause to believe a traffic violation has occurred, the stop is constitutionally reasonable."). Thus, the only issue before us is whether the officers were justified in their decision to conduct a pat-down search of the appellee for weapons.

-3-

In *Terry*, the United States Supreme Court ruled as follows:

> We merely hold today that where a police officer . . . reasonably [] conclude[s] . . . that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for . . . safety, he is entitled for [] protection . . . to conduct a carefully limited search . . . to discover weapons. . . .

392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968). Thus, the Fourth Amendment permits a protective frisk where a law enforcement officer has reasonable suspicion that the suspect is armed. *Id*. at 37, 88 S. Ct. at 1883; *Hughes v. State*, 588 S.W.2d 296, 304 (Tenn. 1979). A frisk has been upheld as reasonable when the suspected crime might typically involve the use of a weapon. When, however, the likely crime does not involve a weapon, "other circumstances" must be present to justify a *Terry* frisk. *Sibron v. New York*, 392 U.S. 40, 74, 88 S. Ct. 1912 (1968) (Harlan, J., concurring)). "Other circumstances" include:

> a characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession. . . .

LaFave, *Search and Seizure*, § 9.5(a) (3d ed. 1996) (footnotes and citations omitted). In the recent case of *Arizona v. Johnson*, ___ U.S. ___, 129 S. Ct. 781 (2009), the United States Supreme Court reaffirmed prior holdings and made clear that, following a lawful traffic stop, police need not have additional cause to believe any occupant of the vehicle is involved in further criminal activity to justify a pat-down, rather "[t]o justify a pat[-]down of the driver or a passenger during a traffic stop, . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, ____ U.S. ____, 129 S. Ct. 781, 784 (2009); *see also Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882 (1997) (extending the holding in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330 (1977), that following a valid traffic stop, drivers could be ordered out of the vehicle in the interest of officer safety without violating their Fourth Amendment rights to include passengers in the vehicle as well). The Court has noted that the risk of a violent encounter in a traffic-stop setting "stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." *Maryland v. Wilson*, 519 U.S. at 414, 117 S. Ct. 886. "[T]he motivation of a passenger to employ violence to prevent apprehension of such a crime," the Court stated, "is every bit as great as that of the driver." *Id.*

In granting the motion to suppress in this case, the trial court found as follows:

I think the general rule is well stated in the case of *Johnson v. State*, reported in 601 S.W.2d, beginning at page 326. Quoting the Court, "The [ ] question we face is whether a police officer, after having stopped a motor vehicle for a traffic violation, has the right to check the passengers who happen to be in the vehicle and nothing else appears amiss. We hold the officers have no such right."

In this particular case, the Court finds that the officer had no right to search the passenger; there was nothing amiss. I don't think there was any reasonable suspicion to search the driver either. But even if there were, it did not give the officer the right to order the passenger out of the vehicle, and accordingly, the motion is granted.

However, we cannot conclude that the evidence does not preponderate against these findings, as the facts of *Johnson* are distinguishable. In that case, a police officer stopped an automobile for a misdemeanor traffic offense, and the driver voluntarily exited the vehicle and spoke with the police officer near the patrol car. *Johnson*, 601 S.W.2d at 327. The officer then walked to the automobile to "check the passengers." *Id*. The court found that the police officer had provided no reason for approaching the vehicle to check out the passengers other than curiosity. *Id*. at 329. There was no testimony that the officer feared for his safety, and no pat-down search of the driver was conducted. *Id*. The court specifically noted that, "The narrow question we face is whether a police officer, after having stopped a motor vehicle for a traffic violation, has the right to 'check the passengers' who happen to be in [a] vehicle, nothing else appearing amiss. We hold that officers have no such right." *Id*. at 328.

Based upon the testimony given by Officer Palmer and Deputy Crocker, which the trial court in no way discredited, we must conclude that something was "amiss." Officer Palmer testified that the driver of the car was acting in a suspicious manner, including making motions pulling his shirt down as if to conceal something near his waist. When Officer Palmer asked the driver if he had a weapon, and the driver did not respond, it was reasonable for Officer Palmer to become concerned for his and Deputy Crocker's safety based on the possibility of a weapon either on the driver's person or in the vehicle. It was further reasonable that he communicate that concern to Deputy Crocker. At that point, Deputy Crocker specifically testified that he was unaware if Officer Palmer had seen an actual gun and, if so, where it was located. His action of asking the appellee to step outside the car was entirely reasonable. Upon exiting the car, the appellee's behavior of sticking his hand in his pocket and refusing to remove it further justified additional reasonable suspicion for the pat-down. Contrary to the trial court's findings, based upon the totality of the circumstances, we conclude that the officers reasonably concluded that the suspects could be armed and were, thus, entitled to conduct a limited pat-down search or frisk to discover weapons. *See Arizona v. Johnson*, ___ U.S. ___, 129 S. Ct. at 184. Because the evidence preponderates against the court's findings, we conclude that it was error to grant the motion to suppress.

**CONCLUSION**

Based upon the foregoing, the decision of the Obion County Circuit Court granting the motion to suppress is reversed, and the case is remanded to the court for further action consistent with this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE