[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-15690

————————————————

D.C. Docket No. 1:15-cr-20838-UU-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PAUL JOHNSON, JR.,

Defendant - Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(March 22, 2018)

Before JORDAN and JILL PRYOR, Circuit Judges, and DUFFEY,[*] District Judge.

---

[*]Honorable William S. Duffey, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

DUFFEY, District Judge:

This appeal requires us to consider whether the pat down of a burglary suspect and the identification of a round of ammunition in the suspect's pocket constitutionally allowed the officer to retrieve the round and another item from the suspect's pocket.

## I. BACKGROUND

A.    Facts

The City of Opa-Locka, Florida has "high crime constantly," including shootings and armed burglaries usually committed by multiple people.  Hrg. Transcript at 3-4, 39 (Doc. 22).  The Opa-Locka Police Department receives a "high volume of calls" including "bodily harm done to others [and] firearms used in different aspects of the crimes from burglaries to robberies to home invasions." Id. at 22.

On June 14, 2015, shortly after 4:00 a.m., the Opa-Locka Police Department received a 911 call about a potential burglary in progress at a multifamily duplex located at 2525 Superior Street in Opa-Locka (the "Duplex").  The Duplex contained four units.  Close behind the Duplex, on the north side, was a wooden fence that separated the Duplex to the south from the adjacent property to the

north.  The front of the Duplex contained a small parking lot with a gate at the center.

The 911 caller reported that a "person [was] trying to get through the window of [a] neighbor's house" and described the person as a black male wearing a white shirt.  Id. at 6, 19.  Officer Dwight Williams was dispatched to investigate.  During the dispatch call he was given the description of the suspected burglar.

Officer Williams arrived at the Duplex within five minutes of receiving the call.  Corporal B.A. Colebrooke arrived at the Duplex in a separate car at about the same time.  When Officer Williams and Corporal Colebrooke got to the Duplex, it was still dark outside, and they "saw [Mr. Johnson] coming from the back, the west, back side of the complex" through an unlit alleyway.  Id. at 5.  Mr. Johnson, a black male, was wearing a white shirt.  The officers did not see anyone else in the area.

Officer Williams and Corporal Colebrooke drew their weapons, pointed them at Mr. Johnson, and ordered him to come to the front of the building with his hands up.  Mr. Johnson complied, and Officer Williams handcuffed him and ordered him to get down on the ground.  Officer Holborow arrived while they were ordering Mr. Johnson to put his hands up.  Officer Williams testified that Mr. Johnson matched the description given by the police dispatcher, and he told Mr. Johnson that he was being detained until they could "figure things out."

3

Id. at 33.  Mr. Johnson was detained "very far" from the fence, "towards the front of the complex" in the parking area.  Id. at 12, 27-28.

Officer Williams testified that, because of "the nature of the call, the area of the call, and the lighting conditions," he detained Mr. Johnson and conducted a pat down "for officer safety."  Id. at 5, 7-8.  During the pat down, Officer Williams testified:

> I felt like a nylon piece of material; and then, underneath it, a round, hard-like, oval-shaped object, which led me to believe it was ammunition, from the previous encounters with training [sic] and experience throughout the City of Opa-Locka.

Supp. Hrg. Transcript at 6 (Doc. 30).  Officer Williams further testified:

> I immediately thought it was ammunition.  And then, after that, I immediately thought, you know, maybe there's a weapon somewhere nearby, maybe there's another person in an apartment that may come out with something; so, you know, I just wanted to remove that and just try to make the scene secure as much as possible for the other officers.

Id. at 7.

Officer Williams reached into Mr. Johnson's right front pocket and removed a black nylon pistol holster and one round of .380 caliber ammunition.  Officer Williams "notified the officers in the area" and asked Mr. Johnson: "was [sic] there any more weapons or anything near that this ammunition and this holster goes [sic] to."  Hrg. Transcript at 10 (Doc. 22).  Mr. Johnson said there was not.

4

The investigation activity continued.  Two officers provided a description of the activity and why it was conducted.[1]  Officer Williams testified at the Suppression Hearing:

> Q.  Finding a person at 5 in the morning with ammunition and a holster in their pocket, what did you think to do next?
> A.  Canvas the area to see if the weapon was possibly thrown.  We have that a lot in Opa-Locka.
> Q.  Why would you be looking for weapons to have been thrown? Can you explain that?
> A.  I was looking for the weapons to be thrown because the round that was in his pocket and the holster led me to believe that there is a weapon that that round goes to and something goes into that holster.

Hrg. Transcript at 10 (Doc. 22).  Officer Williams further testified:

> Q.  So it wasn't until after finding the holster and the bullet that the officers began canvassing to look for firearms?
> A.  Correct.
> Q.  They had no other reason to believe that there were any firearms around there?
> A.  We normally do a check given the nature of those type of calls.
> Q.  You canvas an entire area even if there is no reason, you don't find any kind of ammunition or holster?
> A.  We normally always just look around and just see if there is anything; weapons, narcotics, anything.
> Q.  Look sort of in the immediate area where the person was --
> A.  Correct.
> Q.  -- detained?  And you didn't -- and you didn't locate any firearms in the, sort of, 10 feet or so surrounding Mr. Johnson?
> A.  No.

Id. at 33-44.  Officer Horn testified:

> Q.  And you mentioned this on direct as well, but so, you know, you arrive, you see Mr. Johnson handcuffed on the ground with a bullet

---

[1]    These descriptions were offered at the January 4, 2016, Suppression Hearing and the April 8, 2016, Supplemental Suppression Hearing.

and holster there, and then at that point officers begin to conduct a canvas for firearms?
A. Yes.
Q. And that's because they found the holster and bullet in his pocket?
A. Right.
Q. And the reason for -- they had no other reason to think there were guns around there, right?
A. Right.
Q. And immediately the first check was sort of the immediate area where Mr. Johnson was detained --
A. Yes.

. . . .

Q. In your experiences in responding to a robbery, will you canvas the scene?
A. Sometimes if we need to find evidence.
Q. What is it that you are looking for?
A. Any evidence that would be tied to the crime that we are investigating.
Q. Are you also looking to secure the scene?
A. Yes, absolutely.  And additional suspects.

Id. at 60, 64.

At the April 8, 2016, Supplemental Hearing, Officer Williams testified:

Q. Officer Williams, when you felt the pocket, what did you think?
A. I immediately thought it was ammunition. And then, after that, I immediately thought, you know, maybe there's a weapon somewhere nearby, maybe there's another person in an apartment that may come out with something; so, you know, I just wanted to remove that and just try to make the scene secure as much as possible for the other officers.

Supp. Hrg. Transcript at 6-7 (Doc 30).

During the further investigation Officer Williams walked toward the back of

the Duplex "where [he] found a hole in the fence" separating the Duplex in which

6

Mr. Johnson claimed he lived and the property behind it.  Hrg. Transcript at 11-12 (Doc. 22).  Mr. Johnson had been "less than a foot" away from the hole when Officer Williams and Corporal Colebrooke first saw him.  Id. at 12.  Officer Williams "then got in [his] car and drove around the block to the north side of [the] [D]uplex across the fence where [he] found two pistols laying near the hole."  Id. at 11.  It took Officer Williams "15 to 20 minutes" to find the two firearms after retrieving the round of ammunition and holster from Mr. Johnson's pocket.  Id. at 15.  The firearms were found on the property directly north of the Duplex.  Id. at 36.  Officer Williams ran a check of the serial numbers and discovered the firearms had been reported stolen.[2]

Mr. Johnson was transported to the Opa-Locka Police Station, read his Miranda rights, and questioned.  Mr. Johnson claimed that his brother and his cousin bought the firearms "off the street," brought them to his house, and the three of them hid the firearms in the backyard.

B.    Procedural History

On October 27, 2015, a federal grand jury returned an indictment charging Mr. Johnson with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

---

[2]    Officer Dennis Horn arrived after the ammunition and holster were retrieved from Mr. Johnson's pocket.  Hrg. Transcript at 41 (Doc. 22).  After he helped canvass the area for weapons, Officer Horn knocked on the door of the unit in which Mr. Johnson claimed he lived. Id. at 41.  After approximately fifteen minutes, Mr. Johnson's girlfriend answered the door and stated that Mr. Johnson lived in the unit.  Id. at 41-42.

On December 14, 2015, Mr. Johnson moved to suppress all physical evidence and statements derived from the pat down leading to the seizure of the two firearms and ammunition. Mr. Johnson argued that the officers lacked probable cause to search him without a warrant, the search was not incident to his arrest, and he did not consent to the search.

On January 11, 2016, the Magistrate Judge conducted an evidentiary hearing. On January 19, 2016, the Magistrate Judge issued her Report and Recommendation ("R&R"), recommending that Mr. Johnson's motion be denied because the stop and pat down were lawful.

Mr. Johnson timely filed his objections to the R&R. On March 15, 2016, the district court chose to refer the matter back to the Magistrate Judge to develop the record further on the limited issue whether Officer Williams's decision to reach into Mr. Johnson's pocket was prompted by a reasonable belief that the object identified during the pat down was a weapon or contraband.

On April 8, 2016, the Magistrate Judge conducted the second evidentiary hearing. At the beginning of the hearing, the Magistrate Judge stated that the district judge directed:

> She refer[red] the matter back to me for resolving one issue; and that issue, as she phrased it, was . . . "the record is unclear whether Officer Williams' decision to reach into defendant's pocket following the frisk of defendant's outer clothing was prompted by a reasonable belief that the concealed object was a weapon or contraband."

8

Supp. Hrg. Transcript at 3-4 (Doc. 30).

Officer Williams testified at the second hearing that, upon patting Mr. Johnson's outer clothing, he "immediately" identified the lump he felt as ammunition.  Supp. Hrg. Transcript at 7 (Doc. 30).  On April 25, 2016, the Magistrate Judge issued her Supplemental R&R, which again recommended that Mr. Johnson's motion be denied.  Mr. Johnson filed objections to the Supplemental R&R.

On May 20, 2016, the district court overruled Johnson's objections and adopted the R&R.  United States v Johnson, Case No. 1:15-cr-20838-UU (Doc. 37) (S.D. Fla. May 20, 2016).  The district court found that an investigatory stop was reasonable under Terry v. Ohio, 392 U.S. 1 (1968), because the officers had reasonable suspicion, supported by specific and articulable facts, that Mr. Johnson was involved in the reported burglary.  The district court concluded that, at the time he conducted the pat down, Officer Williams had reasonable suspicion to believe that his safety or the safety of others was at risk, including because the officers were dispatched to a suspected burglary, during the pre-dawn hours, to a high-crime area where burglaries are typically armed and, when they encountered Mr. Johnson, he was in a dark alley and matched the description of the suspect provided by the caller.  The district court also observed that, at the time of the

9

frisk, the scene was not secure because the officers had not inspected the home of the reported burglary for additional suspects.

The district court concluded that Officer Williams's decision to search the interior of Mr. Johnson's pocket and remove the ammunition and holster was a permissible continuation of the initial frisk. The district court stated that "[a]n officer's seizure of ammunition following a lawful frisk when investigating a possible violent crime, particularly when confronted with an unsecure scene, is sufficiently connected to officer safety not to run afoul of the Fourth Amendment." Johnson, Case No. 1:15-cr-20838-UU (Doc. 37) at 12. Although the Magistrate Judge did not find credible Officer Williams's testimony that Mr. Johnson consented to a search before the pat down, the Magistrate Judge concluded, and the district court agreed, that because the pat down and search of the pocket were permissible under Terry, it was not necessary to determine whether Mr. Johnson consented to the search after the initial pat down. Magistrate Report and Recommendation (Doc. 21) at 6 n.1, 9 n.2; Johnson, Case No. 1:15-cr-20838-UU (Doc. 37) at 6-7.[3]

On June 8, 2016, Mr. Johnson entered a conditional plea of guilty to Count One of the Indictment. In his written plea agreement, Mr. Johnson reserved the

---

[3]    Having found that Officer Williams's pat down and removal of ammunition from Mr. Johnson's pocket were lawful, the district court did not address Mr. Johnson's remaining arguments for suppression of the weapons and Mr. Johnson's statements as fruit of the poisonous tree because they were "conditioned on the unlawfulness of the initial search." Johnson, Case No. 1:15-cr-20838-UU (Doc. 37) at 13.

right to appeal the district court's ruling on his motion to suppress on the grounds of (i) whether the pat down was permitted under Terry, and (ii) whether the search of his pocket exceeded the scope of Terry.  The district court sentenced Mr. Johnson to 37 months' imprisonment.

## II. STANDARDS OF REVIEW

"A ruling on a motion to suppress presents a mixed question of law and fact."  United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007) (citation omitted).  This Court will "review the district court's findings of fact for clear error and its legal conclusions *de novo*."  Id.  The district court's "factual determinations on evidentiary issues will not be disturbed unless they are clearly erroneous." United States v. Williams, 936 F.2d 1243, 1249 (11th Cir. 1991).  When considering a ruling on a suppression motion, we construe all facts in the light most favorable to the party that prevailed below and afford substantial deference to the district court's credibility determinations, whether explicit or implicit.  United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012).

Preserved Constitutional issues are reviewed *de novo*.  United States v. Scott, 263 F.3d 1270, 1271 (11th Cir. 2001).

## III. DISCUSSION

Mr. Johnson presents two issues in this appeal.  First, whether the district court erred in finding there was a sufficient basis to justify the pat down.  Second,

whether the district court "erred in concluding that an officer was permitted to reach into his pocket, following a frisk of his outer clothing, where (1) the officer immediately recognized the object he felt as a single round of ammunition, which, absent a firearm . . . could pose no danger to officer safety, and (2) the round was not immediately apparent contraband."  (Appellant Br. at 2).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  The Supreme Court has held that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).

To determine the legality of an investigatory stop under Terry, we first consider if the stop was justified at its inception.  See United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006).  We then ask whether the officer's actions were reasonably related in scope to the circumstances that justified the stop in the first place.  See id.  In making these assessments, we look at "the totality of the circumstances—the whole picture[.]"  United States v. Cortez, 449 U.S. 411, 417 (1981).

12

A.

Mr. Johnson does not contest that the initial investigatory stop was lawful. He argues, however, that the district court erred in concluding that the circumstances in this case were sufficient to justify a pat down.

"Once an officer has stopped an individual, he may conduct a pat down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened." United States v. Griffin, 696 F.3d 1354, 1359 (11th Cir. 2012). The district court, in adopting the Magistrate Judge's Report and Recommendation, concluded that

> [T]he Report reasonably concluded that the following factors justified the pat-down of Johnson's outer clothing: (1) the Officers were dispatched to a suspected burglary; (2) during pre-dawn hours; (3) to a high-crime area where burglaries are typically armed burglaries; (4) and, when they encountered Johnson he was in a dark-alley and matched the description of the suspect provided in the 911 call. Moreover, at time of the frisk the scene was not secure as the Officers had not inspected the home of the reported burglary for additional suspects.

United States v Johnson, Case No. 1:15-cr-20838-UU (Doc. 37) (S.D. Fla. May 20, 2016) at 9-10.

Mr. Johnson argues that "[t]here is no evidence that [he] acted evasively, reached for his waistband, attempted to flee, tried to strike an officer, or did anything else that courts generally conclude could lead an officer to reasonably believe he was armed and dangerous." (Appellant Br. at 14).

13

In determining whether a pat down is warranted, "Terry does not demand definitive evidence of a weapon or absolute certainty that an individual is armed." United States v. Griffin, 696 F.3d 1354, 1359 (11th Cir. 2012). In evaluating an officer's actions, the court does not consider each observation in isolation. United States v. Lopez-Garcia, 565 F.3d 1306, 1313 (11th Cir. 2009). "[R]easonable suspicion may exist even if each fact alone is susceptible of innocent explanation." United States v. Bautista-Silva, 567 F.3d 1266, 1272 (11th Cir. 2009) (internal quotation marks omitted). In determining if an officer reasonably believed his safety or the safety of others was threatened, the court considers "the totality of the circumstances in the light of the officer's special training and experience." United States v. Matchett, 802 F.3d 1185, 1192 (11th Cir. 2015).

Here, the totality of the circumstances of the investigatory stop supports the constitutionality of the pat down. Officer Williams, and others, received a report of a suspected burglary around 4:00 a.m. in a high-crime area by a black suspect wearing a white shirt. Mr. Johnson fit the description of the suspect and was the only person in the area. Mr. Johnson relies on various cases to argue that some specific threat was required before a pat down was allowed, but the cases cited do not support Mr. Johnson's argument that more concrete threatening conduct was required for the officers to reasonably believe that their safety was threatened and a pat down justified. The question is whether a police officer reasonably believed,

14

based on the totality of the circumstances, that his safety, or the safety of others, was threatened. Griffin, 696 F.3d at 1359; see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (explaining that an individual's presence in a high-crime area is a relevant factor in the reasonable-suspicion analysis); United States v. Felix, No. 16-16457, 2017 WL 5176219, at *4 (11th Cir. Nov. 8, 2017) (affirming district court's holding that "[s]topping an individual who matches the description of an armed robber in relative close proximity to the crime scene, within ten minutes of the crime occurring, and patting them down for weapons is well within the bounds of the Fourth Amendment and Terry"); United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (stating that an individual's proximity to illegal activity is relevant to the reasonable-suspicion analysis).[4]

The district court found that Officer Williams and the other officers were responding to a reported burglary around 4:00 a.m. in a high-crime area, in which many burglaries involve weapons, Mr. Johnson matched the general description of the suspect, the scene was not yet secure, and the officers were uncertain whether there were other suspects in the vicinity. Considering the totality of the facts, the district court correctly found that Officer Williams reasonably believed that his safety, or the safety of his fellow officers, was at risk. Giving due weight "to the specific reasonable inferences which he is entitled to draw from the facts in light of

---

[4] We recognize that unpublished opinions are not binding on the panel. We note, however, that they are helpful in explaining the legal principles that apply.

his experience," Terry, 392 U.S. at 27, we do not believe that the district court erred in ruling that these facts supported a pat down or in holding that the pat down was allowed. The pat down did not violate Mr. Johnson's Fourth Amendment rights.

B.

We consider next whether Officer Williams's decision to reach into Mr. Johnson's front pants pocket and retrieve the round of ammunition and nylon holster impermissibly exceeded the lawful scope of a protective search. We conclude that it did. "The Terry case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.'" Ybarra v. Illinois, 444 U.S. 85, 93 (1979) (quoting Dunaway v. New York, 442 U.S. 200 (1979)). The purpose of a protective search under Terry is "not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972).

Our circuit has repeatedly affirmed that "a Terry search may continue when an officer feels a concealed object that he reasonably believes may be a weapon." United States v. Clay, 483 F.3d 739, 743-44 (11th Cir. 2007) (affirming an officer's search of a defendant's pockets to retrieve an empty barrel of a ball-point pen where officer had reason to believe the item "might be a screwdriver or

16

something similar that could be used as a weapon"). "Under Terry, a search does not exceed 'that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby' if the officer has an objective, reasonable belief that 'his safety or that of others is in danger.'" Id. at 744 (quoting Terry, 392 U.S. at 26-27). The pat down and feeling of an object in a pocket is limited, however, to determining if the object is a weapon.

An officer's protective frisk to search a suspect's outer clothing for weapons has been extended to allow the seizure of contraband—the incriminating character of which is apparent during an otherwise lawful pat down for weapons. Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). In patting down for weapons, an officer may identify and seize contraband in a suspect's pocket. As we noted in Griffin:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass make its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.

Griffin, 696 F.3d at 1363 (citing Dickerson, 508 U.S. at 375); see also Dickerson, 508 U.S. at 375-76 ("[I]f the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.").

The question before us is whether the ammunition round that Officer Williams identified justified the further intrusion into Mr. Johnson's pocket to extract it and the holster. The Government does not contest that the round in

17

Mr. Johnson's pocket was not believed to be contraband when found. See United States v Johnson, Case No. 1:15-cr-20838-UU (Doc. 37) (S.D. Fla. May 20, 2016) at 12 ("Ammunition itself, though . . . is not illegal; and Officer Williams did not know Johnson was a felon at the time he retrieved the ammunition."). The Government also does not contend that ammunition alone is a weapon. The Government suggests, however, that the principle in Dickerson that permits the seizure of readily apparent contraband extends to items that are neither weapons nor contraband because the retrieval of an item identified during a proper Terry pat down does not present an invasion of privacy greater than the pat down itself. (Appellee Br. at 23).

Dickerson, carefully read, does not justify the warrantless retrieval of any item identified during an outer garment pat down. It allows an intrusion into the pocket if an outer clothing search allows a police officer to conclude that an item in a pocket is a weapon or contraband. Items not in these two categories cannot be retrieved. To allow the intrusion into a pants pocket to retrieve an object that is not contraband or a weapon would expand Terry-based searches beyond what is constitutionally allowed based on the faulty reasoning that any identifiable object may be retrieved. It also would invite an extended pat down to identify items so that a further intrusion into pockets of outerwear could be conducted.

To support that the seizure of the round of ammunition was lawful, the district court relied on an unreported case, United States v. Perez, No. 09–20096–01–KHV, 2010 WL 571839 (D. Kan. Feb. 12, 2010), for the proposition that "[e]ven though bullets by themselves are not weapons, courts have held that it is reasonable for an officer to retain bullets during a Terry pat down search."  2010 WL 571839, at *4.  Perez does not support the district court's conclusion.  The Perez court determined that the officer's seizure of a single bullet from the defendant's pocket was illegal after concluding the defendant did not possess any weapons.  Id. at *4 n.5.  The cases cited in Perez support only the unremarkable proposition that various facts have been found to support an officer's reasonable belief that his safety or that of others was in danger. [5]

We hold, on the facts here, that the presence of a single round of ammunition—without facts supporting the presence, or reasonable expectation of the presence, of a firearm—was insufficient to justify the seizure of the bullet and the holster from Mr. Johnson's pocket.  While deference is owed to the experience and training of police officers, Officer Williams's testimony at the supplemental hearing is not enough, on the facts of this case, to support the search.  The district court's reliance on the officers' confrontation of an "unsecure scene" while

---

[5]    The cases cited in Perez stand for the proposition that recovery of ammunition from a pocket was allowed where there was evidence of the possession or the presence of a weapon. We express no view on whether those cases were correctly decided.

"investigating a possible violent crime" did not support the additional intrusion into Mr. Johnson's pocket to retrieve a round of ammunition, because a bullet was not a weapon and was not immediately identifiable as contraband. Therefore, the court erred in not suppressing the ammunition round and holster.[6]

## IV. CONCLUSION

We **REVERSE** the district court's decision not to suppress the ammunition and holster and **VACATE** the judgment entered against, and sentence imposed upon, the Appellant. We **REMAND** this case to the district court for further proceedings consistent with this Opinion.

---

[6]   Terry searches are not "necessarily restricted to the outer clothing of the suspect" and "may be extended to include areas within the immediate control and ready access of the detained suspect." United States v. Rainone, 586 F.2d 1132, 1136 (7th Cir. 1978). The search of the hole in the fence, and the adjacent property on the other side of the fence, however, cannot be justified as a lawful extension of the Terry search itself. The testimony showed that Mr. Johnson was handcuffed on the ground "very far" from the fence, "towards the front of the complex" in the parking area. Hrg. Transcript at 12, 27-28 (Doc. 22). It took Officer Williams "15 to 20 minutes" to get in his car, drive around the block, and discover the two firearms in the adjacent parcel to the north of the Duplex. Id. at 11, 15. Thus the search of the adjacent parcel along the fence cannot be justified as an expansion of the initial Terry stop. See Government of Canal Zone v. Bender, 573 F.2d 1329, 1332 (5th Cir. 1978) ("To allow the scope of a Terry search to extend outside the area of immediate control would be to sever the Terry exception from its rationale.").

20